United States District Court
Southern District of Texas
**ENTERED**
September 27, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| JOSEPH BABINO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-24-1870 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Joseph Babino was detained in the Harris County Jail. He alleges that another detainee, Christopher Spears, threw boiling water on him after he and Spears had an argument. Mr. Babino sues Harris County under 42 U.S.C. § 1983, (Docket Entry No. 1), and Harris County has moved to dismiss the complaint, (Docket Entry No. 6). Instead of responding to Harris County's initial motion to dismiss, Mr. Babino amended his complaint to add two Harris County Jail employees in their official capacities, alleging that they allowed Spears to attack him. (Docket Entry No. 5). Harris County moves to dismiss the amended complaint on the basis that Mr. Babino fails to plead a "pattern or practice" and therefore cannot recover against the County under *Monell*. Based on the pleadings, the motion, and the applicable law, Mr. Mr. Babino's claims against Harris County are dismissed, without prejudice and with leave to amend no later than November 1, 2024. Mr. Babino's claims against Officer Robert Craddock and Floor Supervisor J. Dabbracio are dismissed, with prejudice, because they are barred by limitations and amendment would be futile.

**I.     Background**

Mr. Babino was a pretrial detainee at the Harris County Jail in May 2022. On May 17, 2022, he witnessed Spears, another detainee who shared Mr. Babino's "pod," engage in behavior that Mr. Mr. Babino found disrespectful. Spears pulled down his pants, pressed his genitalia against a window, and masturbated as a female correctional officer, Garnet, walked past the "pod." Mr. Babino verbally reprimanded Spears. Garnet removed Spears from the shared pod. However, late that evening or early morning the next day, Floor Supervisor Dabbracio allowed Spears to be returned to the shared pod. Officer Craddock was the officer assigned to the first watch for Mr. Babino's floor and pod at the time. Around 6:45 a.m., Spears boiled water in a hotpot available to detainees and threw the boiling water on Mr. Babino while he was asleep. Spears's attack on Mr. Babino was captured on camera. Mr. Babino suffered severe burns and was hospitalized for 13 days. He continues to suffer from a number of health issues stemming from the attack. Spears received a five-year prison sentence for the attack.

Craddock's report on the incident described Spears as "belligerent" and referred to his past disruptive behavior. Garnet also reported the behavior that had led her to separate Spears from Mr. Babino. Mr. Babino's amended complaint alleges that "Harris County's practice and policy is to allow detainees to attack other detainees with no intervention or action to stop attacks." (Docket Entry No. 5 ¶ 8). Mr. Babino asserts a claim for municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Mr. Babino alleges that Harris County allowed the "overcrowding of the jail, leaving the jail unable to adequately supervise officers and detainees, were the direct cause and moving force of [his] injuries." (Docket Entry No. 5 ¶ 36). He alleges that these policies give rise to failure to train and failure to supervise claims under § 1983.

II.     **The Legal Standards**

### A. The Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### B. Municipal Liability Under 42 U.S.C. § 1983

A government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiffs'] injury...." *Monell v. New York City Dep't of Soc.*

*Servs.*, 436 U.S. 658, 694 (1978). "Municipalities are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017); *Monell*, 436 U.S. at 692. Rather, the municipality itself must have caused the violation. *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). Municipal liability requires proof that a constitutional violation occurred, that a municipal policymaker promulgated an official policy, and that the policy was the moving force behind the constitutional violation. *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

An "official policy" is a policy statement, ordinance, or regulation that has been officially adopted by a policymaker. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004). A policy may be a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy. *Id.*; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 639 (5th Cir. 2010).

"[P]roof of a single instance of unconstitutional activity is [generally] not sufficient for § 1983 liability." *Valentine Found. v. Uphoff*, 211 F. App'x 276, 278 (5th Cir. 2006) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 288 (5th Cir. 2002); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("proof of a single violent incident ordinarily is insufficient" for liability; the "plaintiff must

4

demonstrate 'at least a pattern of similar incidents in which the citizens were injured.'" (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554–55 (5th Cir. 1989)).

"A failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dallas Cty.*, 994 F.3d 477, 482 (5th Cir. 2021). A municipality's failure to train law enforcement in constitutional practices and limits "can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of [law enforcement] novices …." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). To plead a failure-to-train or failure-to-supervise claim, the plaintiff must allege facts that show "that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623.

Deliberate indifference requires the plaintiff to allege facts that show that "the official [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998). "Deliberate indifference requires a showing of more than negligence or even gross negligence*.*" *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Proof of deliberate indifference "generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001)); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) ("[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a pattern of violations");

5

### III. Analysis

#### A. The *Monell* Claims

Mr. Babino fails to plausibly plead a pattern or practice of Harris County Jail employees failing to prevent detainee attacks on other detainees. While Mr. Babino's complaint describes other incidents of detainee-on-detainee violence in the Harris County Jail, each of these incidents occurred after the attack on Mr. Babino. Harris County argues, (Docket Entry No. 6 ¶¶ 9-10), and the court agrees, that to establish a pattern or practice implicating municipal liability, similar incidents must have occurred before the incident giving rise to the claim. *See, e.g.*, *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) (plaintiffs failed to establish a pattern when they presented evidence of incidents occurring only after the alleged constitutional violation). Mr. Babino fails to allege an instance of similar detainee on detainee violence that had occurred before Spears attacked him.

Mr. Babino incorporates by reference the allegations in two other cases filed in this district: *Wagner et al. v. Harris County, Texas*, No. 4:23-cv-02886, and *Ana Garcia v. Harris County, Texas*, No. 4:23-cv-04366. Neither meets Mr. Babino's pleading burden. (Docket Entry No. ¶ 62). The plaintiffs in *Wagner* alleged only one incident of detainee-on-detainee violence that occurred before Spears attacked Mr. Babino in May 2022. The allegations in *Garcia* primarily involved a failure of Harris County Jail personnel to provide appropriate medical care to a detainee, not a failure to adequately prevent detainee-on-detainee violence.

Mr. Babino also relies on a 2009 report by the Department of Justice, which he asks the court to take judicial notice of, to argue that Harris County was aware of its "constitutional failures" long before the attack on Mr. Babino in 2022. (Docket Entry No. 5 ¶¶ 47-54). Mr. Babino emphasizes the report findings that the Harris County Jail lacked "an adequate plan for managing

6

a large and sometimes violent detainee population." The report states that the Harris County Jail "lacks necessary systems to ensure compliance with constitutional standards," primarily with respect to the lack of appropriate psychological and medical care made available to detainees. The report also states that overcrowding at the Harris County Jail led to "frequent" violence between detainees. The report specifically notes that over a 10-month period, the Jail reported 3,000 fights and 17 incidents of sexual assault. The report concluded that the Harris County Jail needed to "develop and implement additional policies and procedures for the investigation of serious incidents, including excessive use of force and detainee-on-detainee violence."

Harris County asserts that this report is outdated, irrelevant, and not probative of constitutional failures in the Harris County Jail when Spears attacked Mr. Babino. (Docket Entry No. 4 ¶¶ 35-40). The court disagrees. When paired with allegations of prior instances of detainee-on-detainee violence, this report has helped prior plaintiffs bringing similar claims support allegations of a pattern or practice of failing to adequately deter detainee-on-detainee violence. *See, e.g., Wagner v. Harris Cnty.*, 2024 WL 2836332, at *12-13 (S.D. Tex. June 4, 2024) (Ellison, J.) (the plaintiff plausibly alleged the existence of a municipal policy of inadequately observing detainees by alleging numerous prior incidences of detainee-on-detainee violence; alleging statistics showing that in 2020, 2021, and 2022, there were more detainee assaults in the Harris County Jail than in all other Texas county jails combined; alleging statements by then-Harris County Sheriff Ed Gonzalez acknowledging ongoing detainee on detainee violence in the Jail in 2016; and the Texas Commission on Jail Standards report noting the Harris County Jail's failure to comply with minimum standards for constitutional incarceration); *Howell v. Harris Cnty., Texas*, 2024 WL 3647012 (S.D. Tex. Aug. 1, 2024) (Ellison, J.) (the existence of a pattern or practice of allowing violence towards detainees in the Harris County Jail was evidenced by the

7

2009 Department of Justice Memorandum, statements by the Harris County Sheriff, the 2021 Texas Commission on Jail Standards report, and the *Wagner* complaint, which contained allegations of six similar prior incidents of guard-on-detainee violence); *Bartee v. Harris Cnty.*, 2018 WL 8732519 (S.D. Tex. Mar. 5, 2018) (Gilmore, J.) (finding sufficient the plaintiff's factual allegations of approximately 90 instances of violence by officers against detainees in the year before the attack on the plaintiff; of the 2009 Department of Justice report describing constitutional deficiencies in the Harris County Jail's responses to officer-on-detainee violence; and testimony from an officer involved in the attack on the plaintiff that his actions comported with accepted Harris County Jail policy).

  Mr. Babino alleges no similar incidences of detainee-on-detainee violence between the closing of the DOJ investigation in 2019 and the occurrence of the attack on him in May 2022 that could show a pattern of ongoing constitutional violations at the Harris County Jail.  Without more, this report is not sufficient to plausibly plead a pattern or practice of failing to prevent detainee-on-detainee violence that led to the attack on him and to the violation of his constitutional rights. *See Inaimi v. Harris Cnty., Texas*, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022).

  Mr. Babino alleges that Harris County failed to "adequately train its correctional officers on how to deal with inmate-on-inmate violence," leading to an unofficial "policy [] to not get involved or prevent detainee violence."  (Docket Entry No. 15 at 7).   More specifically, Mr. Babino alleges that Harris County failed to train officers on how to de-escalate violent altercations between detainees and on the need to put detainees known to present a risk of attacking another detainee in separate cells. (Docket No. 5 ¶ 67).  Mr. Babino also claims that Harris County failed to adequately supervise Jail personnel or discipline those who failed to prevent known risks of detainee-on-detainee violence.  (*Id.* ¶ 68).

Mr. Babino's failure-to-train allegations have the same deficiencies as his general allegations about Harris County's *Monell* liability. Mr. Babino alleges that Harris County's failure to adequately train Jail personnel on de-escalating altercations between detainees, including housing them separately, caused his injury. (Docket Entry No. 5 ¶¶ 66-67). To be considered a County "policy or custom," this failure to train must amount to a deliberate indifference on the part of Harris County officials. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). To plead deliberate indifference, a plaintiff must allege facts that could "demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotations omitted). "[A] single incident is usually insufficient to demonstrate deliberate indifference." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

As discussed above, Mr. Babino has not alleged facts that could show a pattern of incidents in which Harris County Jail officers failed to separately house detainees likely to harm the other. The allegations that Jail personnel put Spears and Mr. Babino in the same pod, thereby giving Spears an opportunity to seriously injure Mr. Babino, allege a single incident, not a pattern or practice. Because Mr. Babino's case "falters on the requirement of deliberate indifference," the court "need not address the other two prongs of supervisory liability." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005).

Mr. Babino also brings a § 1983 claim against the City of Houston based on ratification. (Docket Entry No. 5 ¶¶ 74-76). "Under [a] ratification theory, a single incident that is an 'obvious violation of clearly established law' attaches liability when ratified by policymakers." *Harper v. McAndrews*, 499 F. Supp. 3d 312, 321 (E.D. Tex. 2020) (quoting *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)). These claims are proper

9

when "the authorized policymakers approve a subordinate's decision and the basis for it … [so that] their ratification would be chargeable to the municipality." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). To state a § 1983 claim against Harris County based on ratification, Mr. Babino must allege that a County policymaker affirmatively approved both a subordinate's decision and the unconstitutional basis for it. *Torres v. City of Houston*, 2012 WL 6554157, at *3 (S.D. Tex. Dec. 14, 2012) (citing *World Wide St. Preachers*, 591 F.3d at 755-56). Harris County argues that the factual scenario presented by this case is not "extreme" enough to give rise to a ratification claim. (Docket Entry No. 4 ¶ 46). The court agrees that the facts here are not extreme. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (suggesting that ratification could occur when a supervisor explicitly defended a subordinate's actions and "the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law"); *see also*, *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 n.48 (5th Cir. 2019). Mr. Babino's basis for ratification is his allegation that Dabbracio approved Craddock's release of Spears back into the pod he shared with Mr. Babino. (Docket Entry No. 5 ¶ 13). Mr. Babino makes no allegations that anyone with policymaking authority on behalf of Harris County, such as Sherriff Gonzalez, ratified Dabbracio's or Craddock's actions. Thus, Mr. Babino has not stated a plausible claim under a ratification theory of *Monell* liability.

B. **Service, the Statute of Limitations, and Relation Back**

Harris County argue that the complaint should be dismissed as to Craddock and Dabbracio because Mr. Mr. Babino added them as defendants after the statute of limitations expired. (Docket Entry No. 6 ¶ 2 n.1). Harris County claims that doctrine of "relation back" under Rule 15(c) does not apply. (*Id.*) Mr. Babino filed his complaint on May 16, 2024, immediately before the limitations expired, and added Officer Craddock and Dabbracio in their official capacities as

10

defendants on August 7, 2024. (Docket Entry No. 5). Mr. Babino argues that as Harris County Jail employees, Craddock and Dabbracio had notice of the lawsuit and the claims against them, which are based on the same occurrences that give rise to the suit against Harris County. (Docket No. 15 at 8-9).

Federal Rule of Civil Procedure 15(c) allows for an amended pleading to relate back to the original pleading "when, among other requirements, the party 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023) (quoting FED. R. CIV. P. 15(c)). Other courts in this district have held that when law enforcement officers are sued in their official capacity, the municipality that employs them has notice of the suit and relation-back is permitted as to claims against the municipality. *Shephard v. Gonzales*, 2017 WL 11554997 (S.D. Tex. Sept. 12, 2017). This situation presents the reverse. Craddock and Dabbracio would not have had notice of the claims Mr. Babino now asserts against them simply because Harris County was sued. Moreover, as the City correctly argues, Rule 15(c) applies when there is a mistake as to the identity of the defendant, which is not the issue here. "Failing to identify individual defendants cannot be characterized as a mistake." *Winzer v. Kaufman*, 916 F.3d 464, 471 (5th Cir. 2019).

### IV. Conclusion

Mr. Babino's claims against Harris County are dismissed, without prejudice and with leave to amend no later than November 15, 2024. Mr. Babino's claims against Officer Robert Craddock and Floor Supervisor J. Dabbracio are dismissed, with prejudice, because they are barred by

limitations and amendment would be futile.

SIGNED on September 27, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge